**In the Matter of the WELFARE OF S.Z.**

No. C0–95–763.

Court of Appeals of Minnesota.

Aug. 22, 1995.

Review Granted Oct. 27, 1995.

William R. Kennedy, Hennepin County Public Defender, Renee Bergeron, Asst. Public Defender, Minneapolis, for appellant Father.

Michael O. Freeman, Hennepin County Atty., Andrew J. Mitchell, Asst. County Atty., Minneapolis, for respondent County.

Andrea K. Niemi, Dresselhuis, Niemi & Barr, P.A., Minneapolis, for Guardian Ad Litem.

Considered and decided by SHORT, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Jeffrey Nichols challenges termination of his parental rights to S.Z. Despite a finding of palpable unfitness to parent, Nichols claims the county had a duty to offer services to reunify him with S.Z. We disagree and affirm.

## FACTS

S.Z. was born on June 6, 1993. S.Z. was removed from the mother 10 days after birth when the Hennepin County Department of Family and Children's Services (county) alleged S.Z. to be a child in need of protection and services. Five months later, Nichols formally acknowledged his paternity.

Nichols and S.Z.'s mother each have a long history of mental illness and substance abuse. The mother claimed that during their ten-year relationship Nichols assaulted her. Nichols has been diagnosed as having undifferentiated schizophrenia and being a polysubstance abuser. He has had frequent hospitalizations, commitments, and numerous problems associated with his mental illness, including a propensity for violence toward himself and others. Nevertheless, Nichols denies that he is mentally ill and refuses to take antipsychotic medication.

In the fall of 1993, Nichols was committed to a regional treatment center after two police holds were placed on him. This police involvement occurred after Nichols claimed that he placed a bomb in city hall and after he was found on the street acting disoriented and delusional. The commitment order was eventually stayed, but in December 1993 Nichols attempted suicide and was again hospitalized.

When the county petitioned to terminate both parents' parental rights in January 1994, Nichols had just begun an eight-month commitment at the St. Peter Regional Treatment Center and at a chemical dependency center. He was provisionally discharged in August after several unauthorized leaves. He declined to follow any of the discharge recommendations, including that he see a psychiatrist, take medication, and reside in a halfway house.

Nichols' termination hearing was held on November 29, 1994, after termination of the mother's parental rights. The trial court found three statutory bases for terminating Nichols' parental rights: failure to correct neglect conditions, palpable unfitness, and neglected child in foster care. Minn.Stat. § 260.221, subd. 1(b)(2), (4), (8) (1994). On appeal, Nichols claims that the trial court erred in terminating his rights because no county effort was made to reunite him with S.Z.

## ISSUE

Did the trial court err in terminating the father's parental rights where no services were offered to rehabilitate him or reunify him with the child?

## ANALYSIS

A natural parent is presumed to be a "fit and suitable person to be entrusted with the care of his child." *In re Clausen,* 289 N.W.2d 153, 156 (Minn.1980). Despite this presumption, "the best interest[s] of the child standard [is a] paramount consideration in termination of parental rights proceedings." *In re J.J.B.,* 390 N.W.2d 274, 279 (Minn.1986); *see In re M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990). To terminate parental rights the state must establish a statutory basis by clear and convincing evidence. Minn.Stat. § 260.241, subd. 1(1994); Minn. R.Juv.Proc. 59.01. The standard of review in parental termination cases requires the appellate court to consider

whether the trial court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous.

*M.D.O.,* 462 N.W.2d at 375.

The trial court based its conclusion that Nichols' parental rights should be terminated on three statutory grounds. *See* Minn.Stat. § 260.221, subd. 1(b)(2), (4), (8) (1994). Proof of only one of the statutory grounds is required for termination. *Id.* § 260.241, subd. 1.

Nichols contends that the case was tried only on the theory of his palpable unfitness to parent. The county concedes this point, although it contends the evidence presented at trial also supported other statutory bases for termination. Nichols claims that the trial court erred in terminating for palpable unfitness when the county offered no services aimed at reunification.

■ A finding of palpable unfitness is appropriate when there is a

consistent pattern of specific conduct before the child or specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

*Id.* § 260.221, subd. 1(b)(4). Contrary to Nichols' allegation, there is no requirement under this section that the social services agency make reasonable efforts to either rehabilitate the parent or reunite the family. Other sections of the statute specifically condition termination of parental rights on a finding that such reasonable efforts have failed. *See id.* § 260.221, subd. 1(b)(2), (5). Under the palpable unfitness section, however, the very nature of the parent's condition may allow for termination. *See In re Welfare of Kidd,* 261 N.W.2d 833, 835 (Minn. 1978) (chronic mental illness resulting in conduct detrimental to child deemed proper basis for termination). A palpably unfit parent is the antithesis of a capable parent. Thus, the palpable unfitness section does not re-

quire that services have been offered to rehabilitate a palpably unfit parent or reunite that parent with his or her offspring.

■ In this case, there is substantial evidence supporting the trial court's finding of Nichols' palpable unfitness to parent. Nichols' extreme behavior would endanger S.Z. and place the child at an extremely high risk of neglect or abuse. Because only one statutory basis must exist to support termination, this court declines to examine whether the evidence supported the termination under the other statutory bases found by the trial court.

## DECISION

The trial court properly terminated appellant Jeffrey Nichols' parental rights to S.Z. for Nichols' palpable unfitness to parent S.Z. The court properly declined to require the county to have offered services to reunify the family or rehabilitate Nichols.

**Affirmed.**