*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0645**

In the Matter of the Welfare of the Child of:
D. F. and J. B., Parents.

**Filed October 13, 2015
Affirmed
Stoneburner, Judge\***

Blue Earth County District Court
File No. 07-JV-14-4754

Thomas K. Hagen, Jeremy R. Alm, Rosengren Kohlmeyer, Law Office Chtd., Mankato, Minnesota (for appellant D.F.)

Ryan B. Magnus, Jennifer L. Thon, Jones and Magnus, Mankato, Minnesota (for appellant J.B.)

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent county)

Susan Kohls, St. Peter, Minnesota (guardian ad litem)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.

_____

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

The parents of B.B. challenge the district court's order terminating their parental rights, arguing that respondent county failed to establish a statutory basis for termination of parental rights. Father also argues that termination of parental rights is not in B.B.'s best interests. Because clear and convincing evidence supports the district court's finding that parents failed to correct conditions that led to B.B.'s out of home placement and that termination of their parental rights is in B.B.'s best interests, we affirm termination of parental rights under Minn. Stat. § 260C.301, subd. 1(b)(5) (2014).

## FACTS

B.B., who was born on September 11, 2013, is, based on the limited amount of information presented about him in this case, a healthy child with no special needs, who has not suffered any injury, trauma, abuse, or neglect. B.B. came to the attention of respondent Blue Earth County Human Services Department (the county) in January 2014, after appellants D.F. (mother) and J.B. (father) were seen, in the presence of B.B., smoking synthetic marijuana out of a "one-hitter" at Mystic Lake Casino. Mother and father were charged with possession of synthetic marijuana, and the county worked with them to develop a safety plan for B.B. that included parents' abstinence from alcohol and non-prescribed drugs.

In March 2014, police were called to a domestic disturbance at father's home, where mother and B.B. were also residing. B.B. was in the home. Mother and father were both intoxicated. Mother was nursing B.B., but stopped when law enforcement

suggested that she give him formula. In April 2014, the county, concluding that voluntary efforts to work with parents had failed, petitioned the district court for an order designating B.B. as a child in need of protection or services of the court (CHIPS). Parents initially denied the petition, and the matter was set for trial, pending which B.B. was to remain in mother's custody under the county's protective supervision. The district court ordered that the parents' use or possession of alcohol or mood-altering chemicals while with the child would be considered a basis for B.B.'s out-of-home placement.

During a subsequent home visit, county child-protection worker Anne Gustafson suspected that mother was under the influence of alcohol. Mother refused to submit to testing. The district court then placed B.B. in father's temporary custody and ordered that mother be excluded from father's home and that her parenting time with B.B. be supervised by someone other than father. Mother and father subsequently admitted the CHIPS petition, specifically that mother's chemical dependency and care of B.B. while under the influence of alcohol caused B.B.'s environment to be injurious or dangerous to him.

On an unannounced home visit in June 2014, the county found mother in father's and B.B.'s home, in violation of the district court's order. Both parents refused to take a preliminary breath test, and the county obtained an order to remove B.B. from father's home. B.B. was placed in relative foster care, where he has remained throughout these proceedings.

Case plans were developed for mother and father; both parents signed the plans, and the plans were adopted by the district court. Despite having signed the plans, neither

3

parent cooperated with the county or the plans. Mother and father failed to comply with chemical-use testing and monitoring; failed to provide the county with requested releases and information; failed to follow through with provisions for liberal visitation with B.B.; and failed to participate or to verify participation and progress in treatment, aftercare, and sobriety-support programs.

In December 2014, when B.B. had been in foster care for six months, the county petitioned for termination of parental rights (TPR) to B.B., alleging four statutory grounds as bases for TPR and that TPR is in B.B.'s best interests. After a trial at which mother declined to testify, the district court granted the TPR petition on all of the asserted statutory grounds and its finding that TPR is in B.B.'s best interests. Mother's and father's appeals are consolidated.

## D E C I S I O N

A district court may terminate parental rights if clear and convincing evidence establishes that at least one statutory ground for TPR exists and that TPR is in the child's best interests. Minn. Stat. § 260C.317, subd. 1 (2014); Minn. R. Juv. Prot. P. 39.04, subd. 2(a); *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004). On appeal from a district court's TPR decision we "review the district court's findings of the underlying or basic facts for clear error, but we review its determination of whether a particular statutory basis for [TPR] is present for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 17, 2012). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re*

4

*Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). We give considerable deference to the district court's credibility determinations, *In re Welfare of M.D.O.*, 462 N.W.2d 370, 374-75 (Minn. 1990), and the district court's ultimate decision to terminate parental rights. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). But we examine the sufficiency of the evidence to determine whether it is clear and convincing. *In re Welfare of S.Z.*, 547 N.W.2d 886, 893 (Minn. 1996). "Parental rights are terminated only for grave and weighty reasons." *M.D.O.*, 462 N.W.2d at 375.

The county asserted as the statutory bases for TPR that: (1) parents are palpably unfit to be a party to the parent and child relationship under Minn. Stat. § 260C.301, subd. 1(b)(4) (2014); (2) parents failed to correct conditions leading to out-of-home placement under Minn. Stat. § 260C.301, subd. 1(b)(5) (2014); (3) parents failed to comply with the duties imposed on the parent by the parent-child relationship under Minn. Stat. § 260C.301, subd. 1(b)(2) (2014); and (4) B.B. is neglected and in foster care under Minn. Stat. § 260C.301, subd. 1(b)(8) (2014).

On appeal, mother asserts that the district court abused its discretion by terminating her parental rights under the statutory bases asserted, and father argues that the district court's findings that the statutory grounds exist for TPR and that termination is in B.B.'s best interests are clearly erroneous. Because we conclude that clear and convincing evidence in the record does not support the district court's determination that mother and father are palpably unfit under Minn. Stat. § 260C.301, subd. 1(b)(4), but clear and convincing evidence in the record does support the district court's

5

determination that mother and father failed to correct the conditions that led to B.B.'s out-of-home placement under Minn. Stat. § 260C.301, subd. 1(b)(5), and because the county need only prove one statutory basis to support TPR, we address only those two asserted statutory bases for TPR.

1.      Palpable unfitness

TPR may be supported by a finding that a parent is palpably unfit to be a party to the parent and child relationship

> because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.

Minn. Stat. § 260C.301, sudb.1(b)(4).  A finding that a parent is palpably unfit "requires that the [district] court make the determination of whether reasonable efforts have been made to rehabilitate the parent and to reunite the family."[1]  *S.Z.*, 547 N.W.2d at 892.

The district court found that mother's substance and alcohol use is of a nature and duration that renders her unable, for the foreseeable future, to care appropriately for B.B.'s ongoing needs and that father's complete lack of cooperation with the county and lack of contact with the child show a consistent pattern of conduct before the child and are of a nature that renders him unable, for the reasonably foreseeable future, to care appropriately for the ongoing needs of the child.

---

[1] In his brief on appeal, father states that he does not challenge the district court's finding that the county made reasonable efforts to rehabilitate father and reunite the family.

Parents assert that the evidence is insufficient to support these findings: mother argues that alcohol or substance abuse, by itself, does not render a parent palpably unfit, and father argues that there is no evidence that his lack of cooperation with the county affected his parenting ability. The supreme court has held that substance abuse alone does not render a parent palpably unfit, and reversed TPR based on this statutory ground absent findings "directly relating" a parent's substance use and alcohol consumption to his relationship with the child. *T.R.*, 750 N.W.2d at 663. Parents argue that, as in *T.R.*, there is no evidence in the record showing a causal connection between the specific behavior cited by the district court and the parents' inability to care for the child. We agree.

Although it is troubling that the lack of specific evidence is due in part to parents' lack of cooperation with the case plan, such lack of cooperation supports TPR under a separate statutory basis, as discussed below. The record in this case demonstrates that both parents have considerable parenting strengths, as shown by evidence of their parenting assessments and observations of their appropriate and nurturing interactions with B.B. And there is no evidence in the record that either mother's substance abuse or father's non-cooperative attitude has directly impacted their relationship with B.B., whose needs parents have consistently met during observed interactions. There is evidence that mother was once seen to be nursing B.B. while she was under the influence of alcohol, but there is no evidence in the record of any harm or even potential harm to B.B. from this incident. Based on this record, we conclude that clear and convincing

7

evidence does not support the district court's determination that mother and father are palpably unfit to be a party to the parent-child relationship.

2.    Failure to correct the conditions that led to placement

Minn. Stat. § 260C.301, subd. 1(b)(5), provides that a statutory basis for TPR exists if "following the child's placement out of the home, reasonable efforts, under the direction of the [district] court, have failed to correct the conditions leading to the child's placement." A presumption that reasonable efforts failed arises when the child was under the age of 8 when the CHIPS petition was filed and has been in out-of-home placement for at least six months "unless the parent has maintained regular contact with the child and . . . is complying with the out-of-home placement plan." *Id.*, subd. 1(b)(5)(i).

Mother asserts that the county "did not provide adequate services" to support a finding under this statutory provision. Specifically she challenges the requirement that she go to a designated location to download information from an alcohol-monitoring bracelet, when technology was available to make downloading more convenient for her. But the district court's focus on mother's failure to correct conditions that led to B.B.'s placement was not on her failure to timely download monitoring information,[2] but rather her failure to adequately address her chemical dependency issues, as well as her lack of contact with B.B. despite the county's efforts to facilitate liberal parenting time.

Mother also criticizes the district court for failing to focus on her "ability to assume the duties of a parent" rather than her "failure to formally comply with the case

---

[2] Despite mother's failure to timely appear for information downloading, the monitoring agency was able to recover all information from the monitoring device.

8

plan." But despite evidence in the record that mother had increased her visitation with B.B. in the weeks prior to the TPR trial, no evidence in the record demonstrates that mother has the current ability to assume the duties of a parent. The record contains clear and convincing evidence of mother's failure to maintain regular contact with B.B. and failure to comply with the out-of-home placement plan. The district court's finding that mother has failed to correct the conditions that led to placement is not clearly erroneous, and we conclude that the district court did not abuse its discretion by concluding that this statutory ground supports TPR. Because a single statutory basis for TPR will support TPR that is in the child's best interests, we decline to address the additional statutory bases found by the district court to support TPR as to mother.

Father argues that, as to him, the conditions that led to placement have been corrected and that he has "substantially" complied with the case plan. But the district court found that his behaviors did not allow the district court to credit his testimony. *See In re Welfare of Children of B.M.*, 845 N.W.2d 558, 563 (Minn. App. 2014) (stating that the "district court is in a superior position to assess the credibility of witnesses" (quotation omitted)). Specifically, the district court did not credit father's contention that he has attained sobriety. And despite concerns highlighted in father's parenting assessment, the record contains no evidence that he has addressed a history of health issues that may affect his ability to parent. *See S.Z.*, 547 N.W.2d at 893-94 (stating that, although the evidence supporting TPR must address conditions existing at the time of the hearing, the district court considers current conditions in the context of the history and patterns of the parent's conduct). The evidence is also clear and convincing that father

has barely maintained contact with B.B., having participated in only four visits in more than six months. Clear and convincing evidence supports the district court's finding that father has failed to correct the conditions that led to placement, and we conclude that the district court did not abuse its discretion by basing TPR as to father on this statutory ground.

3.      Child's best interests

Only father argues that the district court erred in finding that TPR is in B.B.'s best interests. "[T]he best interests of the child must be the paramount consideration" in a TPR proceeding. Minn. Stat. § 260C.301, subd. 7 (2014). Even if a statutory basis exists, TPR can only occur if it is in the child's best interests. *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009). The district court must balance the child's interests in preserving the parent-and-child relationship, the parent's interests in preserving that relationship, and any competing interests of the child. Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3); *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *R.T.B.*, 492 N.W.2d at 4.

In this case, the district court engaged in the required balancing of the factors and found that B.B., who has been in out-of-home placement for more than one-half of his life, is in need of permanency in a safe, stable home with appropriate parental care, which neither mother nor father are able to provide for the reasonably foreseeable future. The district court found that B.B.'s immediate need for permanency outweighs the parents'

10

desire to continue the parent-child relationship. Clear and convincing evidence in the record supports the district court's best-interests finding.

**Affirmed.**