595 N.W.2d 223 (1999)
In the Matter of the Welfare of M.H., child.
No. C1-98-2245.
Court of Appeals of Minnesota.
June 22, 1999.
*225 Bradley J. Peyton, Assistant Blue Earth County Attorney, Mankato, for appellant, Blue Earth County.
Allen P. Eskens, Mankato, for respondent.
Considered and decided by SCHUMACHER, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.[*]

OPINION
SHUMAKER, Judge
The district court adjudged M.H. to be a child in need of protection or services and placed her in temporary foster care. Over a year later, the court had not returned M.H. to her home, and Blue Earth County petitioned to terminate M.H.'s mother's parental rights. The court denied the petition and continued M.H.'s temporary foster care placement.
Under the facts here, the statute requires the court to return M.H. to her home or to terminate parental rights. Blue Earth County contends that, because the court did not return M.H. to her home, the only option was to terminate parental rights, and the court erred in not doing so.
We agree with the county that the statute gives only the options of returning M.H. to her mother or terminating her mother's parental rights. But there is no basis for termination, and M.H.'s immediate, unconditional return to her mother is not warranted. The court is not limited to the statutory options, however, for it is vested with inherent judicial discretion to secure the welfare of the child. The court did not abuse that discretion by ordering the continuation of an interim placement pending the satisfaction of certain conditions designed to effectuate the reuniting of M.H. and her mother. We affirm.

FACTS
Alleging that four-year-old M.H. was living in a dangerous environment and was lacking in proper parental supervision, Blue Earth County filed with the district court a "Child in Need of Protection or Services" (CHIPS) petition. M.H. lived with her biological parents, Lisa Dickie and George Hutchins. The petition alleged that there had been many police calls to the residence on reports of domestic abuse, assault, and loud parties. The court immediately placed M.H. in temporary foster care, where she remains.
The court heard the petition on January 13, 1997, and approved an agreement between Blue Earth County and Dickie. Under the agreement the matter was to be continued for 90 days. If necessary, a second 90-day continuance would be granted. Dickie was to admit the CHIPS *226 allegations, but the admission would not be filed and the matter would be dismissed if Dickie complied with the Initial Child Placement Plan. Hutchins did not appear at the hearing.
The court held a review hearing on May 18, 1997. Blue Earth County contended that Dickie had failed to satisfy the requirements of the Initial Child Placement Plan. The court agreed, adjudged M.H. to be a child in need of protection or services, and formally adopted the plan.
At a six-month review on November 12, 1997, the court received reports from child protection and family services indicating that Dickie had made progress in fulfilling the plan but there remained legitimate concerns to be addressed. The court ordered M.H. to remain in temporary foster care and scheduled another review hearing.
Blue Earth County filed a petition on April 29, 1998 to terminate the parental rights of Dickie and Hutchins. As to Dickie, the county alleged that not only was she palpably unfit to be a parent under Minn.Stat. § 260.221, subd. 1(b)(4) (1998), but she also failed to correct the conditions leading to M.H.'s CHIPS determination. After a trial the court found that Hutchins was "the source of virtually all of the problems that have beset Lisa Dickie" and M.H. The court also found that Dickie failed to take appropriate action to protect her child and failed to complete court-ordered steps designed to enable her to reunite with M.H. The court concluded "that it is clearly in [M.H.'s] best interests to terminate Lisa Dickie's parental rights." But, the court ruled, termination cannot be supported solely by the child's best interests; rather, one or more statutory grounds must also be established.
Noting that Dickie had made "significant progress" in fulfilling the placement plan and that some of her failures to comply were not her fault, the court was unable to find by clear and convincing evidence that Dickie was either palpably unfit to be M.H.'s mother or that she had failed to make reasonable efforts to correct the conditions that led to the CHIPS adjudication. Therefore, the court denied the petition to terminate Dickie's parental rights, ordered Dickie to complete a parenting assessment, ordered the county to prepare a revised case plan based on the parenting assessment, and set a review hearing for January 19, 1999. In the interim, the court ordered M.H. to remain in temporary foster care. The court also stated in its order: "The goal of the revised plan shall be the reunification of [M.H.] with Lisa Dickie by July 16, 1999." The court granted the petition to terminate George Hutchins' parental rights. Blue Earth County appealed the court's order denying the petition to terminate Lisa Dickie's parental rights. On appeal, Lisa Dickie challenges the constitutionality of Minn.Stat. § 260.191, subd. 3b (1998).

ISSUES
I. Did the district court err in denying Blue Earth County's petition for termination of parental rights?
II. Under Minn.Stat. § 260.191, subd. 3b, and under these unique facts, is M.H. able to remain in foster care?
III. Is Minn.Stat. § 260.191, subd. 3b constitutional?

ANALYSIS
"Parental rights are terminated only for grave and weighty reasons." In re Welfare of M.D.O., 462 N.W.2d 370, 375 (Minn.1990) (citation omitted). When we review a termination order this court
must determine whether the trial court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous.
Id. (citation omitted).

I.

Grounds for Termination of Parental Rights
The statutory criteria for termination of parental rights are found in *227 Minn.Stat. § 260.221 (1998). Only one criterion needs to be proven to support termination. In re Welfare of A.J.C., 556 N.W.2d 616, 621 (Minn.App.1996), review denied (Minn. Mar. 18, 1997). The county must prove the grounds for termination by clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 769-70, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982). Moreover, this
burden is subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of his child and that it is ordinarily in the best interest of a child to be in the custody of his natural parent.
In re Welfare of Clausen, 289 N.W.2d 153, 156 (Minn.1980) (citation omitted). Throughout the case, the child's best interests must remain the paramount consideration. Minn.Stat. § 260.221, subd. 4; M.D.O., 462 N.W.2d at 375. The court made findings as to the only two criteria the county offered in support of its petition.

Palpable Unfitness
The first criterion is found in Minn.Stat. § 260.221, subd. 1(b)(4):
[A] parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child * * * of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.
The court found that Dickie had been psychologically scarred by Hutchins' domestic abuse. The court also determined that Dickie's suspicious, oppositional, and defiant nature that contributed to her failure to take advantage of early opportunities to bring the proceedings to a favorable conclusion were conditions of the past and that the legal focus must be on the situation as it existed at or about the time of the trial. See In re Welfare of S.Z., 547 N.W.2d 886, 893 (Minn.1996) (evidence must address conditions that exist at time of hearing and trial court must rely, to great extent, not on past history but on projected permanency of parent's inability to care for child). By the time of trial, Dickie had in fact made significant progress in fulfilling the plan and her failures to comply could not be blamed entirely on her. Cf. In re Welfare of J.S., 470 N.W.2d 697, 702 (Minn.App.1991) (holding petition to terminate parental rights supported where parent failed to cooperate with court-ordered requirements), review denied (Minn. July 24, 1991); see also In re Welfare of B.M., 383 N.W.2d 704, 708 (Minn.App.1986) (finding some progress insufficient), review denied (Minn. May 22, 1986); In re Welfare of J.K., 374 N.W.2d 463, 466 (Minn.App.1985) (declining to hold findings clearly erroneous where evidence indicated improvement immediately before termination hearing), review denied (Minn. Nov. 25, 1985). Some of the reasons for Dickie's failure to comply with the plan were the breakdown of Dickie's furnace which prevented overnight visits with M.H.; M.H.'s need for therapy and her reluctance to visit Dickie; and Dickie's reliance on her attorney's advice in not completing the parenting assessment. Because of these legitimate excuses and Dickie's progress, the court ruled that the county had not proved palpable unfitness. This was not error.

Failure to Correct CHIPS Conditions
The second criterion the court addressed is in Minn.Stat. § 260.221, subd. 1(b)(5), which allows for termination of parental rights if
a determination of neglect or dependency, or of a child's need for protection or services, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination. It is presumed that reasonable efforts under this clause have failed upon a showing that:
(i) a child has resided out of the parental home under court order for a cumulative period of more than one year *228 within a five-year period following an adjudication of dependency, neglect, need for protection or services under section 260.015, subdivision 2a, clause (1), (2), (3), (6), (8), or (9), or neglected and in foster care, and an order for disposition under section 260.191, including adoption of the case plan required by section 257.071;
(ii) conditions leading to the determination will not be corrected within the reasonably foreseeable future. It is presumed that conditions leading to a child's out-of-home placement will not be corrected in the reasonably foreseeable future upon a showing that the parent or parents have not substantially complied with the court's orders and a reasonable case plan, and the conditions which led to the out-of-home placement have not been corrected; and
(iii) reasonable efforts have been made by the social service agency to rehabilitate the parent and reunite the family.
The court found that Dickie had "completed many of the conditions of the plan." Furthermore, Hutchins' absence from the home and the termination of his parental rights substantially corrected many conditions that led to the CHIPS placement. The most critical condition Dickie failed to complete was the parenting assessment. However, the court found that her refusal to cooperate with the assessment was the result of her attorney's advice. As such, the court declined to hold Dickie accountable for relying on that "rather unfortunate advice." See Charson v. Temple Israel, 419 N.W.2d 488, 491 (Minn.1988) (stating that, where the neglect of a client's attorney is inexcusable, and such neglect is purely that of counsel, courts are reluctant to "punish" the innocent client for counsel's neglect). The court's statement that the goal of the revised plan will be the reunification of Dickie and M.H. by a specific date demonstrates that the court found that the conditions leading to the CHIPS determination would be fully corrected.
After a thorough review of the court's extensive findings and the record, we hold that the statutory criteria have not been proved by clear and convincing evidence and that the court's findings are not clearly erroneous.

Best Interests of the Child
The court found that if it were to consider M.H.'s best interests in isolation from any of the statutory criteria, it would be in M.H.'s best interests to terminate Dickie's parental rights. After making findings on the pertinent statutory criteria, however, the court appears to have determined that Dickie will be a fit parent in the reasonably foreseeable future. The court's refusal to terminate Dickie's parental rights under these circumstances is consistent with applicable law. See Minn.Stat. § 260.221, subd. 1(b)(5) (court may terminate rights of a parent to a child if it finds that after a determination of a child's need for protection or services, "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination"). Although a child's best interests are paramount in a decision to terminate parental rights, M.D.O., 462 N.W.2d at 375, a court may not base termination of parental rights solely on the best interests of a child. J.K., 374 N.W.2d at 466.

II.

Permanent Placement
Minn.Stat. § 260.191, subd. 3b(a) (1998) provides:
The court shall conduct a hearing to determine the permanent status of a child not later than 12 months after the child is placed out of the home of the parent.
If the court decides not to return the child to its home, the statute gives four placement options: (1) award custody to a suitable relative; (2) terminate parental rights and allow adoption; (3) place the child in long-term foster care if the child is at least *229 12 years old; and (4) provide a fixed period for foster care if the child is a runaway or a habitual truant or has committed a delinquent act before age ten. Minn.Stat. § 260.191, subd. 3b(d). The county agrees that options (1), (3) and (4) are not available in this case. The county contends that, since the court decided not to return M.H. to her home, the only option left is to terminate Dickie's parental rights and to allow M.H. to be adopted. We see it differently.
We have held that the trial court did not err in finding that the county failed to prove a statutory criterion for termination. Termination of parental rights is not proper unless at least one termination criterion is proved. See Minn.Stat. § 260.221, subd. 1(b) (court may terminate parental rights if it finds one or more statutory conditions to exist); 260.241, subd. 1 (1998) (stating that a court may terminate parental rights if the court finds by clear and convincing evidence that one or more of the conditions set out in section 260.221 exist). To adopt the county's argument would be to hold that because the court had not returned M.H. to her home within 12 months it must terminate her mother's parental rights even though no termination criterion exists.
The statutes do not address the predicament of this case. Under a literal reading of the statute, it appears that the court cannot continue with a temporary foster home placement in excess of 12 months. Rather, the statute gives the court the options to return the child home or to order one of four out-of-home permanent placements. None of the four out-of-home placements is available in this case. By the court's own findings, an immediate return of M.H. to her home is not desirable, although the court anticipates such return by July 16, 1999. We do not believe the law intends to force the court to select from two inappropriate statutory options. The "primary object of all courts, at least in America, is to secure the welfare of the child * * *." State ex rel. Flint v. Flint, 63 Minn. 187, 189, 65 N.W. 272, 273 (1895) (even though statute provides that suitable father is entitled to custody of minor, this is not absolute right beyond control of courts, and primary object is to secure child's welfare). The court here determined that the continuation of protective foster care for a limited time so that M.H.'s mother can fulfill conditions that will result in M.H.'s return to her home was the most appropriate disposition to secure M.H.'s welfare. This disposition was within the court's inherent discretion.

III.

Constitutionality of Statute
Dickie argues that Minn.Stat. 260.191, subd. 3b(c), violates her constitutional right to due process and violates the doctrine of separation of powers. Her allegations are not supported by persuasive legal argument. In addition, the trial court did not address Dickie's constitutional claims. Although Dickie now cites some authority for her constitutional arguments, this court generally considers "`only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.'" Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988) (quotation omitted). Even in the context of termination of parental rights, failure to raise constitutional issues in the district court precludes the issues from being raised on appeal. In re Welfare of C.L.L., 310 N.W.2d 555, 557 (Minn.1981). In accordance with C.L.L., we decline to review Dickie's constitutional issues.

DECISION
We affirm the district court's order denying the county's petition to terminate M.H.'s mother's parental rights and continuing M.H. in foster care for a limited time pending her mother's satisfaction of certain conditions precedent to M.H.'s return to her home.
Affirmed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.