*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1307**

In the Matter of the Welfare of the Child of: C. M. R. and T. P. D., Parents

**Filed February 16, 2016
Affirmed; motion granted
Klaphake, Judge**[*]

Hennepin County District Court Juvenile Division
File No. 27-JV-14-3495

Mary F. Moriarty, Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for appellant father)

Michael O. Freeman, Hennepin County Attorney, Kacy Wothe, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Andrew Morant, Assistant Hennepin County Attorney, Minneapolis, Minnesota (for mother C.M.R.)

Patricia Timpane, Minneapolis, Minnesota (guardian ad litem)

Considered and decided by Stauber, Presiding Judge; Reilly, Judge; and Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant T.P.D. challenges the termination of his parental rights to M., now four, arguing that the district court abused its discretion by ruling that appellant failed to satisfy the duties of the parent-child relationship and is palpably unfit to be a parent and by concluding that termination of appellant's parental rights is in M.'s best interest. Appellant also moves to strike portions of respondent's brief. Because we see no abuse of discretion, we affirm; because the documents appellant moved to have stricken were not in the record, we grant the motion.

## DECISION

We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion. *In re Welfare of Children of J.R.B.,* 805 N.W.2d 895, 905 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). Parental rights may be terminated if a district court finds that at least one statutory basis is supported by clear and convincing evidence. *In re Welfare of Children of S.E.P.,* 744 N.W.2d 381, 385 (Minn. 2008). The district court based its decision to terminate appellant's parental rights on findings that appellant had neglected the duties of the parent-child relationship and was palpably unfit to be a party to that relationship and the conclusion that termination of appellant's parental rights was in M.'s best interests.

### 1. Neglect of duties of the parent-child relationship

Parental rights may be terminated if the district court finds "that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties

imposed upon that parent by the parent and child relationship, including . . . providing the child with the necessary food, clothing, shelter, education and other care and control necessary for the child's physical, mental, or emotional health and development . . . ." Minn. Stat. § 260C.301, subd. 1(b)(2) (2014).[1]

M. was removed from his parents' home in August 2014, when he was two years and eight months old. Two child-care professionals testified as to his condition at that time. A child protection worker (C.P.W.) testified that M. was "very nonverbal," made "inaudible verbal grunts," could not use words in sentences as most children his age do, and lacked the social skills of children his age. A child services social worker (C.S.S.W.) testified that M. had a cough, dry lips that were cracked and peeling, and severe diaper rash; he acted out and could not speak or communicate; his major behavioral problems were banging his head and frequent temper tantrums that could last for hours; he was aggressive to the point of hitting and punching others; he was afraid of water and could not be bathed; he did not sleep through the night; and he screamed if someone tried to touch him. He "was very behind developmentally in his receptive language skills" and "severely neglected." The C.S.S.W. also noted that, since being in foster care, M. had made significant improvement, was speaking in short sentences, and had stopped hurting himself.

---

[1] The statute also requires a finding that either reasonable efforts have been made by the social services agency and have failed to correct the conditions on which the petition was based or the agency's reasonable efforts would be futile and therefore unreasonable. Appellant does not dispute the district court's finding that reasonable efforts were made and that they failed to correct the conditions.

These professionals also testified about their experiences with appellant. C.P.W. answered "no" when asked if (1) appellant "fully understands the developmental challenges that [M.] faces," (2) appellant "has demonstrated that he has the ability to keep [M.] on track developmentally," (3) appellant "has demonstrated that he is aware that [M.] was behind when he came into the care and custody of the department," and (4) appellant thought he had a chemical dependency problem. C.P.W. also testified that appellant often "presented as very angry, very upset, very hostile, . . . very short tempered, and that's concerning to me, from a child protection standpoint." He said of appellant that it was "concerning to have a client who engages in domestic violence and doesn't seem to think that that's a problem." When asked if he would be "concerned that [M.] would be in danger in [appellant's] care and custody, C.P.W. said "Yes, I would." When asked if appellant shows any insight into domestic violence, he answered, "Not really, no. There's very little insight at all." C.P.W. testified that appellant's visits with M. "were suspended because of [appellant's] failure to demonstrate sobriety" and had not been reinstated because of appellant's continued failure to demonstrate sobriety. Finally, C.P.W. testified that appellant could not meet M.'s needs and would not be able to do so in the reasonably foreseeable future; therefore, C.P.W. recommended terminating appellant's rights.

C.S.S.W. testified about a visit of appellant with M. during November 2014:

> [M.] was crying most of the time. [Appellant] . . . was gone
> for . . . 20 minutes, and [M.] thought the visit was over, so he
> was really happy.
>
>     . . . .
>
>     . . . [M.] was in the waiting room with the current foster
> parents and . . . they were reading a book to him and he was

4

calmed down . . . . But then upon seeing [appellant] again come back and telling him he had to go back into the visitation room for more time with [appellant], he had a major meltdown. We had to end the visit.

Appellant testified that he: (1) had assaulted M.'s mother twice, in January 2014 when M. was in their home, and in August 2014, after M. had been removed; (2) was still angry with M.'s mother, although they were no longer together, and had no other anger issues; (3) received his case plan in August 2014, but delayed in engaging in it because he felt that he had done nothing wrong, nothing had been proved against him, and lots of people have arguments; (4) was not cooperative with participating in anger management; (5) had not completed the urinalysis tests required by the case plan because he used marijuana for pain; (6) had not participated in parenting education required by the case plan; (7) had not completed the mental health assessment required by the case plan; (8) could understand M. and thought he communicated very well, although M. made only guttural noises; (9) was not concerned about M.'s aggressive behaviors because he was only three; and (10) had not been receptive to the case plan, but was now taking steps to address domestic violence as it required.

Particularly as it pertained to M. and to appellant's progress with the case plan, appellant's testimony conflicted with that of C.S.S.W. and C.P.W. The district court addressed these conflicts, finding that the testimony of C.P.W. and C.S.S.W. was "credible, accurate and consistent," while appellant's testimony, particularly in regard to: (1) his problems with anger and domestic violence, his need to address them, and the impact of domestic violence on M.; (2) his lack of awareness or inaccurate reporting of M.'s

5

aggressive behavior; (3) his use of marijuana; and (4) M.'s inability to communicate verbally was not credible. "Considerable deference is due to the district court's decision because the district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996). The district court's findings are supported by record evidence, and its conclusion that appellant neglected the duties of the parent-child relationship was not an abuse of discretion.

Appellant argues that the district court erred because it "relied upon [appellant's] earlier noncompliance instead of focusing on [his] skills and behavior at the time of the trial" and that this court should reverse the termination of his parental rights. But none of the four cases on which he relies for this argument supports his position. *In re Children of T.R.*, 750 N.W.2d 656, 658 (Minn. 2008) involved a county's failure to show that it had made reasonable efforts to reunite the parent and child, which is not an issue here; *In re Welfare of P.R.L.*, 622 N.W.2d 538, 545 (Minn. 2001) reversed this court's decision and reinstated the district court decision terminating the rights of a parent who, like appellant, had not shown that the conditions leading to the out-of-home placement had been corrected and had not complied with the case plan; *In re Welfare of S.Z.,* 547 N.W.2d 886, 893 (Minn. 1996) affirmed a termination of the rights of a parent on grounds of palpable unfitness where the parent, like appellant, would be unable to care for or meet the needs of the child for the reasonably foreseeable future; and *In re Welfare of J.W.*, 807 N.W.2d 441, 442-43 (Minn. App. 2011) concerned a parent whose rights to six older children had been terminated and was therefore presumptively palpably unfit to be a party to the parent-child relationship, which is not the case with appellant. The district court did not terminate

appellant's parental rights solely because appellant had neglected the duties imposed by the parent-child relationship but also because there was no basis to assume that he would not continue to neglect them.

## 2. Palpable unfitness

Parental rights may also be terminated if there is clear and convincing evidence "that a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the . . . relationship . . . that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child." Minn. Stat. § 260C.301, subd. 1(b)(4) (2014).

The district court found that

> Due to [appellant's] emotional instability, volatility, and drug use, [M.] came from a chaotic and unregulated home environment that resulted in [his] poor condition when he came into the custody of the Department. [M.] did not have access to necessary medical, educational, or emotional care and clearly suffered as a result. Furthermore, the Court finds that [M.]'s condition has improved significantly since being removed from the day to day care of his parents, which further indicates that [M.]'s poor condition was the result of the nature of [appellant's] care rather than related to [M.]'s underlying conditions. [Appellant's] emotional instability, anger, and drug use so substantially interfered with his ability to appropriately parent [M.] as to render [appellant] palpably unfit to be a parent. [Appellant], as a result of either willful deception or ignorance, was not aware of [M.]'s medical and emotional needs and [M.] suffered as a result of inadequate care.

Appellant relies on *T.R.* to argue that the district court erred in basing its conclusion that he is palpably unfit on his failure to comply with the case plan. But *T.R.* does not hold

7

that failure to comply with a case plan may not be used as a grounds for ruling a parent to be palpably unfit; it holds that, absent findings that the conduct indicating a failure to comply with a case plan (in *T.R.*, the failure to comply involved the parent's use of chemicals) was connected to the parent's inability to provide for the child's needs, the failure to comply with a case plan was not a sufficient basis for a finding of palpable unfitness. *T.R.*, 750 N.W.2d at 663-64. Here, the district court explicitly found that: (1) M.'s poor condition in April 2014, when he left appellant's home, was due to the "chaotic and unregulated environment" of that home and (2) the fact that M. had made significant improvements after leaving appellant's home indicated that appellant's emotional instability, anger, and drug use were partial causes of M.'s poor condition.

Clear and convincing evidence supports the relevant findings, and the district court did not abuse its discretion in ruling that appellant is palpably unfit to be a party to the parent and child relationship.[2]

### 3. Best interests of the child

In termination proceedings, "the best interests of the child must be the paramount consideration . . . ." Minn. Stat. § 260C.301, subd. 7 (2014). In determining a child's best interests, the district court considers the child's interest in preserving the parent-child relationship, the parent's interest in preserving that relationship, and any competing interests of the child. Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3).

---

[2] Appellant also argues that, because he raised two children who were 37 and 35 at the time of trial, he is not palpably unfit to be a parent. But the fact that appellant was not palpably unfit to be a parent more than 30 years ago does not mean that he is not palpably unfit now.

Here, M.'s interest is in an environment that provides him with stability and meets his significant developmental needs that resulted from the two and a half years he spent with his parents. The district court did not abuse its discretion in deciding that termination of appellant's rights was in M.'s best interests.

Appellant argues in the alternative that the termination was premature and the district court should have declared M. to be a child in need of protection or services (CHIPS) for an extended period. For this argument, appellant relies on *In re Welfare of M.H.,* 595 N.W.2d 223 (Minn. App. 1999). But that case is distinguishable: it concerned extending CHIPS status where the parent was not palpably unfit and had completed many of the case-plan requirements and the parent's failure to complete the parenting assessment, was due to the "rather unfortunate advice" of her attorney. *M.H.*, 595 N.W.2d at 228. Here, appellant testified that the decision not to cooperate with the case plan was his own. Moreover, while the district court in *M.H.* was within its discretion in continuing protective foster care so the parent could fulfill conditions that would enable the child to return to her, *id*. at 229, the district court here was equally within its discretion in concluding that, because clear and convincing evidence indicated that two of the statutory criteria had been met, termination of appellant's rights was in M.'s best interests.[3]

**Affirmed; motion granted.**

---

[3] Because the materials appellant moved to strike from respondent's brief are not included in the record, we grant the motion. *See* Minn. R. Civ. App. P. 110.01 (defining the record on appeal). We note, however, that the information contained in those extra-record materials was provided by other exhibits and by appellant's own testimony.