**In the Matter of the WELFARE OF THE CHILD Of D.L.D. and W. H., Parents.**

**Nos. A09–0564, A09–0608.**

Court of Appeals of Minnesota.

Sept. 1, 2009.

Melanie S. Ford, St. Louis County Attorney, Stacey Sundquist, Assistant County Attorney, St. Louis County Courthouse, Hibbing, MN, for respondent-St. Louis County Public Health and Human Services Department.

Todd E. Deal, Virginia, MN, for appellant-D.L.D.

Terri Port Wright, Esko, MN, for appellant-W.H.

Karen Olson, Hibbing, MN, for guardian ad litem.

Considered and decided by HALBROOKS, Presiding Judge; JOHNSON, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

In these consolidated appeals, appellant-parents challenge the district court's termination of their parental rights, arguing that they rebutted the statutory presumption that they are palpably unfit and that the district court erred by failing to make findings regarding the child's best interests. Because the district court did not err by concluding that appellant-parents failed to rebut the statutory presumption of palpable unfitness, we affirm in part. But because the district court failed to make findings regarding the statutory best-interests criterion, we remand for additional findings.

## FACTS

Appellant-mother D.D. and appellant-father W.H., who are the parents of S.M.H., have a lengthy history of child-protection involvement. Appellant-mother's parental rights to four other children have been involuntarily terminated; appellant-father's parental rights to two other children have been involuntarily terminated. Appellant-mother's parental rights to the children D.D. and C.D. were involuntarily terminated by the district court in 1995. Appellant-parents' parental rights to the child D.L.R.D. were involuntarily terminated in 2002. The termination of appellant-mother's parental rights to D.L.R.D. was affirmed by this court in *In re Welfare of D.L.R.D.*, 656 N.W.2d 247 (Minn.App. 2003). Finally, appellant-parents' parental rights to the child S.L.H. were involuntarily terminated in September 2007. The termination of appellant-mother's parental rights to S.L.H. was affirmed by this court in *In re Welfare of Child of: D.D. & W.H.*, No. A07–1881, 2008 WL 669104 (Minn. App. Mar.11, 2008), *review denied* (Minn. May 7, 2008). The prior terminations were based on appellant-mother's drug use and mental-health issues and appellant-father's abuse of appellant-mother and the parties' child. *See id.* at *2 (describing appellant-mother's continued use of controlled substances and the escalating domestic violence perpetrated by appellant-father against the child and appellant-mother).

This case concerns the child S.M.H., who was born to appellant-parents on August 29, 2008, in St. Louis County. On September 2, respondent St. Louis County Public Health and Human Services (county) filed a termination-of-parental-rights (TPR) petition under Minn.Stat. § 260C.301, subd. 1(b) (2006), alleging that the parents are presumed to be palpably unfit based on their previous involuntary terminations.

On October 7, the district court ordered that the county was not required to make reasonable efforts to rehabilitate and reunify appellant-parents with S.M.H. given the prior involuntary termination of their parental rights. The district court also held that appellant-parents are presumed to be palpably unfit to be parties to the parent-child relationship under statute and

that they bore the burden of rebutting this presumption.

The district court held a trial on December 16, 17, and 29 and received evidence regarding appellant-parents' attempts to demonstrate their parental fitness. The evidence indicates that appellant-parents contacted the Intensive Family Based Services (IFBS) program in October to request admission into the program. IFBS offers counseling and parenting education to families. Appellant-mother had participated in the IFBS program prior to termination of her parental rights to S.L.H. IFBS was unwilling to provide services to appellant-parents because S.M.H. was not in appellant-parents' custody, there was no plan for reunification, and IFBS's resources were limited.

Unable to obtain services from IFBS, appellant-parents began attending parenting classes at the Family Investment Center (FIC) on October 29. The parents attended classes at FIC on November 5 and 26, and on December 10. They attempted to attend a class on October 12, but no instructor was available. The parenting classes were client-based and included a parenting discussion group, which on one occasion consisted of only appellant-parents. Topics included appropriate discipline, Christmas safety, and HIV awareness.

The evidence also shows that appellant-mother continued to engage in therapy to address her documented mental-health issues. Appellant-mother had engaged in counseling with John Seldon at Range Mental Health Center until October 2007. Seldon testified at the TPR trials concerning D.L.R.D. and S.L.H. Appellant-mother testified that she changed therapists because she felt that Seldon did not appear to be listening to her. Appellant-mother also alleged that Seldon fell asleep during a therapy session. Appellant-mother began counseling with psychologist Robert Stehlin in October 2007. Stehlin diagnosed appellant-mother with anxiety, depression, and post-traumatic stress disorder. Around this time, appellant-mother applied for and was deemed eligible for permanent social-security-disability benefits. Appellant-mother attends cognitive behavioral therapy with Stehlin at least two times per month and has never cancelled an appointment. Stehlin does not believe that appellant-mother poses a risk of harm to herself or others and that her condition does not impair her ability to care for a child. Stehlin observed no reason to believe that appellant-mother has ever been under the influence of illegal substances during the time he has treated her.

With regard to chemical use, the evidence indicates that appellant-mother received an updated chemical-dependency evaluation on December 24, 2008, which recommended outpatient treatment. Appellant-mother testified that she is willing to participate in outpatient treatment, but had not started treatment by the time of trial. Appellant-mother had participated in urinalysis testing. Her last positive test was in April 2007, and it indicated the presence of methamphetamine and cocaine. Appellant-mother provided samples that tested negative in May, June, July, August and September 2007, and in March, April, June, August, October and December 2008. And appellant-mother documented her attendance at 22 Narcotics Anonymous (N.A.) meetings between October 11 and November 26, 2008. Appellant-mother testified that she began attending N.A. regularly during her pregnancy with S.M.H. but did not begin documenting her attendance until October.

Appellant-mother's supervising probation officer, Kelli Horvath, testified that at the time of trial, appellant-mother was cur-

rent on all conditions of probation.[1] Horvath testified that while she had received reports that appellant-mother was using chemicals on two occasions, appellant-mother provided samples for urinalysis as requested and the samples revealed no chemical use since spring of 2007.

The evidence shows that appellant-mother has stable housing. Appellant-father lives separately from appellant-mother, but occasionally stays at appellant-mother's apartment. Appellant-mother acknowledges that appellant-father has subjected her to domestic abuse in the past and states that she will immediately end the relationship if there is another incident of domestic violence. Appellant-parents sought couples counseling with therapist Stehlin but had not started counseling by the time of trial due to insurance issues.

Appellant-father presented evidence that he began, but did not complete, a program to address domestic violence issues, the Range Intervention Project. Appellant-father was ordered to complete this program as a condition of probation on his 2007 domestic-assault conviction. Appellant-mother was the victim of this offense. Appellant-father did not complete the program because he was incarcerated as a result of a new conviction of fleeing a police officer in a motor vehicle, which stemmed from conduct that occurred on March 29, 2008. Appellant-father reportedly was under the influence of alcohol when he committed the offense. After evading apprehension for a period of time, appellant-father eventually pleaded guilty to the offense and was sentenced to serve time in jail. Appellant-mother was cited for falsely reporting a crime on April 23, 2008 as a result of her efforts to conceal appellant-father's whereabouts prior to his appearance on the charge.

Appellant-father was incarcerated at the time of S.M.H.'s birth. While incarcerated, appellant-father attended Alcoholic Anonymous (A.A.) groups and participated in cognitive-thinking groups three times a week. Appellant-father also attended A.A. meetings prior to his incarceration in an effort to reinstate his driving privileges. Appellant-father testified that he has maintained sobriety since March 29, 2008. Maintaining sobriety is a condition of appellant-father's sentence for the fleeing conviction. Appellant-father participated in a chemical-use assessment during the criminal proceeding and was determined to be in need of outpatient treatment. Appellant-father had not started outpatient treatment by the time of the TPR trial.

The undisputed evidence indicates that appellant-parents consistently attended weekly visits with S.M.H. during the termination proceeding. There were no reports of inappropriate behavior by the parents during visits. And appellant-parents presented the testimony of relatives who reported seeing no signs of recent domestic violence between the parents and expressed no concerns regarding appellant-parents' past parenting abilities.

Social worker Nancy Melin testified that she has worked with appellant-parents since June 2005. Melin testified that appellant-parents had not presented evidence of their participation in any service that they had not already received in the past. Melin acknowledged that appellant-parents could parent adequately under close supervision but believes that if supervision ended, the parents would return to old habits that would create unsafe situations for a child, as they had done in the past. Melin opined that there are no services that would allow S.M.H to safely return to her

---

1. Appellant-mother was on probation following her guilty plea to third-degree burglary for an offense that occurred on August 1, 2004.

parents' custody. But if a case plan had to be developed, Melin would recommend that the parents reside separately, participate in IFBS, participate in counseling, and follow the recommendations of their chemical-dependency assessments.

At the conclusion of the trial, the district court held that appellant-parents failed to rebut the statutory presumption of palpable unfitness and terminated their parental rights to S.M.H. The district court found that appellant-father continued to engage in criminal behavior during appellant-mother's pregnancy with S.M.H., which negatively impacted appellant-mother; the parents did not avail themselves of services through the county during the pregnancy to prepare themselves to parent the child; the parents were attempting to demonstrate a willingness to do whatever was necessary to be reunified with S.M.H.; appellant-mother changed therapists in an effort to present herself in a better light; and the parents' apparent willingness to cooperate with services and the county was superficial. Ultimately, the district court concluded that "nothing has changed since the last [termination of parental rights] trial in August of 2007" and that neither parent met the burden of presenting evidence sufficient to rebut the presumption of palpable unfitness. The district court's findings of fact, conclusions of law, and judgment do not contain any findings regarding S.M.H.'s best interests. This appeal follows.

## ISSUES

I. Did the district court err by concluding that appellant-parents failed to rebut the statutory presumption that they are palpably unfit to be a party to the parent-child relationship?

II. Did the district court err by failing to make findings regarding S.M.H's best interests?

## ANALYSIS

We review a district court's order for termination of parental rights to determine "whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001). We examine the record "to determine whether the evidence is clear and convincing." *Id.* (citing *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980)); *see* Minn. R. Juv. Prot. P. 39.04, subd. 1 (requiring that the statutory grounds in the petition be proved by clear and convincing evidence); *see also* Minn.Stat. § 260C.317, subd. 1 (2006) (requiring clear and convincing evidence to terminate parental rights). Parental rights may be terminated only for grave and weighty reasons. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). If a parent is found to be palpably unfit to be a party to the parent-child relationship, parental rights may be terminated. Minn. Stat. § 260C.301, subd. 1(b)(4) (2006). But in a TPR proceeding, the best interests of the child are the paramount consideration. *Id.*, subd. 7 (2006).

Appellant-parents claim that the district court erred by concluding that appellant-parents failed to rebut the statutory presumption that they are palpably unfit and by failing to make findings regarding the child's best interests. We address each claim in turn.

## I.

It is presumed that a parent is palpably unfit to be a party to the parent-child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated. *Id.* at subd. 1(b)(4). "Under these circumstances, the parent has the burden

of rebutting the presumption of palpable unfitness." *In re D.L.R.D.*, 656 N.W.2d at 250; *In re Welfare of the Child of T.D.*, 731 N.W.2d 548, 554 (Minn.App.2007). Because their parental rights to other children were involuntarily terminated, the district court correctly held that the statutory presumption of palpable unfitness applied and that appellant-parents bore the burden of rebutting that presumption. Minn.Stat. § 260C.301, subd. 1(b)(4). Thus, appellant-parents had the burden of establishing the existence of conditions that show their fitness to parent S.M.H. *See D.L.R.D.*, 656 N.W.2d at 250.

■ It is undisputed that appellant-parents participated in services in an attempt to demonstrate that they are fit parents. Yet the district court concluded they failed to rebut the statutory presumption of palpable unfitness. Having reviewed the record evidence, we conclude that the district court's findings are supported by substantial evidence and are not clearly erroneous.

When the presumption of unfitness applies, a parent must *affirmatively and actively demonstrate her or his ability to successfully parent a child.* We recognize this is a particularly onerous task when, because of the prior termination of parental rights, the statute has relieved the county of the obligation to develop a case plan and make reasonable efforts to reunite the parent and child. To shoulder this burden, the parent, with the assistance of counsel, is inevitably required to marshal any available community resources to develop a plan and *accomplish results that demonstrate the parent's fitness.*

*Id.* at 251 (emphasis added).

Despite the parents' participation in services, the record does not demonstrate that they are able to successfully parent S.M.H. or that they have accomplished results that demonstrate parental fitness.

Despite the recent order terminating their parental rights to S.L.H., appellant-parents did not seek services from the county during appellant-mother's pregnancy with S.M.H. Instead, appellant-parents waited until after the county petitioned for termination of their parental rights to seek services specific to their parenting abilities. Despite recent recommendations for outpatient chemical-dependency treatment, neither parent had started treatment by the time of trial. Despite a history of domestic violence and a court-order for appellant-father to complete domestic-abuse counseling, appellant-father had not completed domestic-abuse counseling and the parties had not engaged in couples counseling by the time of trial. These delays support the district court's finding that the parents' apparent willingness to cooperate with services and the county is superficial.

Appellant-parents offer several explanations for their failure to complete services. Appellant-father was unable to complete domestic-abuse counseling because he was incarcerated for a new felony-level offense. Appellant-parents sought admission to IFBS but were not accepted into the program because their child was not in their care and reunification was not in progress. They sought couples counseling but were unable to begin due to insurance issues. But regardless of the reasons, appellant-parents did not "accomplish results that demonstrate [parental] fitness." *Id.* Despite appellant-parents' efforts and their cooperation with some services, there is insufficient evidence of change.

Moreover, the services that appellant-parents utilized in this case are the same or similar to the services that they engaged in during their previous TPR proceedings. And their parental rights were previously terminated despite their participation in these services. It is unlikely

that the current services are adequate to bring about results that demonstrate parental fitness given appellant-parents' previous inability to maintain their parental rights despite participation in similar services. Thus, the district court did not err by concluding that "nothing has changed" since appellant-parents' last TPR trial.

Finally, while therapist Stehlin's testimony regarding appellant-mother's parenting abilities was favorable, the district court considered it in the context of previous findings regarding appellant-mother's mental-health issues and their impact on her children. The district court's finding that appellant-mother changed therapists to present herself in a better light implicitly indicates that the district court did not find Stehlin's testimony credible. We defer to this credibility determination. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996).

■ In order to rebut a presumption of palpable unfitness, a parent must do more than engage in services; a parent must demonstrate that his or her parenting abilities have improved. The district court reasonably considered appellant-parents' conduct when determining whether they had rebutted the presumption of palpable unfitness. By the time of S.M.H.'s birth, appellant-father had engaged in felony-level criminal activity during appellant-mother's pregnancy, had been convicted of fleeing a police officer in a motor vehicle, and was incarcerated as a result. Appellant-mother had also been charged with a criminal offense as a result of her attempt to help appellant-father avoid arrest. These behaviors are inconsistent with a finding of parental fitness in the face of a statutory presumption to the contrary.

Substantial evidence supports the district court's finding that appellant-parents did not rebut the statutory presumption of palpable unfitness, and we affirm the district court's decision on this issue.

## II.

■■ If a statutory ground for termination of parental rights is proved, the paramount consideration in determining whether parental rights will be terminated is the best interests of the child. Minn. Stat. § 260C.301, subd. 7. Considering a child's best interests is particularly important in a TPR proceeding because "a child's best interests may preclude terminating parental rights" even when a statutory basis for termination exists. *In re Welfare of M.P.*, 542 N.W.2d 71, 74–75 (Minn.App.1996), *overruled in part on other grounds by In re Welfare of J.M.*, 574 N.W.2d 717, 722–24 (Minn.1998). In a TPR proceeding, the district court must consider the child's best interests and explain why termination is in the best interests of the child. *In re Tanghe*, 672 N.W.2d 623, 626 (Minn.App.2003).

■ Appellant-parents claim that the district court's failure to make findings regarding S.M.H.'s best interests is an error that requires remand.[2] The county acknowledges that the district court's order does not contain findings or conclusions regarding S.M.H.'s best interests. But the county argues that a best-interests determination can be "implied" from the current record, which includes judicial notice of appellant-parents' prior involuntary terminations and the best-interests findings made in those proceedings. The county also argues that it is appropriate to

**2.** Alternatively, appellant-father asserts that reversal is an appropriate remedy but fails to provide legal argument or to cite legal authority in support of this proposition. The issue is not adequately briefed, and we therefore deem it waived. *State v. Hurd*, 763 N.W.2d 17, 32 (Minn.2009).

carve out an exception to the caselaw requirement that the district court make specific findings regarding whether termination of parental rights is in a child's best interests. Specifically, the county asserts that the need for best-interests findings in a TPR case should be assessed on a case-by-case basis. Relying on its suggested case-by-case approach, the county argues that best-interests findings are unnecessary in this case given the application of the statutory presumption of palpable unfitness; appellant-parents' prior involuntary terminations; and the district court's prior findings that termination was in the best interests of appellant-parents' other children.

■ The county's suggestion that we determine the need for specific best-interests findings on a "case-by-case" basis is inconsistent with precedent and the current rules that govern TPR proceedings. We review an order terminating parental rights to determine whether the district court's findings address the statutory criteria. *P.R.L.*, 622 N.W.2d at 543. The child's best interests is a statutory criterion in any TPR proceeding. Section 260C.301, subdivision 7, clearly states: "In *any* proceeding under this section, the best interests of the child must be the paramount consideration." (Emphasis added.) The word "any" is broadly applied in statutes. *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn.1997) (interpreting phrase "any litigation" in Minn. Stat. § 169.685, subd. 4 (1996), by "look[ing] no further than the express language of the statute"). Thus, a district court's findings in support of any TPR order must address the best-interests criterion.

In *Tanghe*, we rejected the argument that it is appropriate to imply a best-interests finding in support of a TPR order even though the district court had considered and relied on evidence that addressed best-interests considerations in making its decision. 672 N.W.2d at 625–26. We held that the absence of findings on the child's best interests in a TPR proceeding constitutes error that requires remand. *Id.* at 626. We reasoned that determination of a child's best interests "is generally not susceptible to an appellate court's global review of a record," and we cited the supreme court's conclusion that "an appellate court's combing through the record to determine best interests is inappropriate because it involves credibility determinations." *Id.* at 625 (citing *In re Marriage of Schmidt*, 436 N.W.2d 99, 105 (Minn.1989)). Thus, the county's suggestion that we adopt a "case-by-case" approach to the need for best-interests findings in support of a TPR order is inconsistent with precedent.

We also note that as of August 1, 2009, the Minnesota Rules of Juvenile Protection Procedure mandate specific best-interests findings in a TPR order. *See* Minnesota Supreme Court Order Promulgating Amendments to the Rules of Juvenile Protection Procedure and the Rules of Adoption Procedure (June 10, 2009) (prescribing and promulgating amendments to be effective on August 1, 2009); Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3) (2009) ("Before ordering termination of parental rights, the court shall make a specific finding that termination is in the best interests of the child and shall analyze: (i) the child's interests in preserving the parent-child relationship; (ii) the parent's interests in preserving the parent-child relationship; and (iii) any competing interests of the child."), 42.08 (requiring that an order granting involuntary termination of parental rights contain "findings regarding how the order is in the best interests of the child"). While the newly adopted rules do not govern the instant TPR pro-

ceeding, the supreme court's adoption of rules that mandate best-interests findings when the district court terminates parental rights is wholly inconsistent with the case-by-case approach suggested by the county.

Moreover, the paramount nature of a child's best interests is a principle that has long been recognized by the legislature and the supreme court. *See* 1988 Minn. Laws ch. 514, § 8 (codification of paramount nature of child's best interests in termination proceedings); *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn. 1986) (noting that the best-interests doctrine "has long been recognized as the common thread in cases determining ... the circumstances in which children are required to live" and adopting the best-interests doctrine "as a paramount consideration" in termination-of-parental-rights cases). Under the best-interests doctrine, every child who is the subject of a TPR proceeding deserves the court's full consideration. A case-by-case determination of whether best-interests findings are necessary to support a TPR order is inconsistent with the paramount nature of the child's best interests, as recognized in statute, caselaw, and the current rules governing TPR proceedings. An exception to the requirement that a child's best interests be the paramount consideration in any TPR proceeding would constitute a significant departure from the policy embodied in section 260C.301, subdivision 7. A policy decision of this nature is entrusted to the legislature, not to this court. *LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn.App.2000) (stating that "[b]ecause this court is limited in its function to correcting errors it cannot create public policy"), *review denied* (Minn. May 16, 2000).

We adhere to our previous holding that the absence of district court findings on the child's best interests in a TPR proceeding precludes effective appellate review because it prevents us from determining whether the district court adequately considered the child's best interests as the paramount consideration. *Tanghe*, 672 N.W.2d at 626.

## DECISION

Because the district court's finding that neither parent presented evidence sufficient to rebut the presumption of palpable unfitness is supported by substantial evidence, we affirm in part. But because appellate review of the ultimate decision to terminate parental rights is not possible given the district court's failure to make findings on the child's best interests, we remand for best-interests findings.

**Affirmed in part and remanded.**