*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1758**

In the Matter of the Welfare of the Child of:
K. L. and F. T., Parents.

**Filed March 30, 2015
Affirmed
Ross, Judge**

Steele County District Court
File No. 74-JV-14-1079

Benjamin M. Cass, Smith, Tollefson, Rahrick & Cass, Owatonna, Minnesota (for appellant F.T.)

David R. Borchardt, Borchardt Law Office, Owatonna, Minnesota (for respondent K.L.)

Daniel A. McIntosh, Steele County Attorney, Sasha J. Zekoff, Assistant County Attorney, Owatonna, Minnesota (for respondent County)

Julie A. Nelson, Owatonna, Minnesota (Guardian ad Litem)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

This appeal is about the legal relationship between now 18-month-old A.T. and his father, F.T. F.T. is the jobless, homeless, chemically dependent father of at least twelve children, none of whom he financially supports. He has a long domestic-violence history, various mental illnesses, and multiple criminal convictions that require him to register as

a predatory offender. One of F.T.'s children died while she was in F.T.'s care in 2011. The district court deemed him palpably unfit to parent a different child in April 2013. Five months later, A.T., F.T.'s twelfth known child, was born.

A Steele County Human Services investigator learned that F.T. had fathered A.T. two months after the birth. The county intervened immediately, removed A.T. to foster care, and filed a child-protection petition. F.T. did not appear at the emergency protective-care hearing in November 2013. He also did not appear at a paternity admit-or-deny hearing in December. He expressed no initial interest in participating in A.T.'s placement plan. The county's case worker informed F.T. in December 2013 that she needed him to sign a release-of-information form before she could involve him in a parenting plan or schedule him for visits with A.T. F.T. did not contact the case worker for five months, and it took him about seven months to sign the release form, in July 2014. This was one month after he appeared at a paternity hearing and denied being A.T.'s father. He also did not attend any of the first seven court hearings in A.T.'s CHIPS proceeding during much of the same period.

F.T. finally admitted paternity in July 2014, two months after the county filed a petition to terminate parental rights. The district court then permitted him one-hour weekly visits with A.T. F.T. visited A.T. only four times. That is, F.T. spent a total of four hours with the child over the entire out-of-home placement period.

The district court conducted a trial and terminated F.T.'s parental rights to A.T. in September 2014. During the trial, the district court looked for evidence that F.T. had rebutted the statutory presumption of his palpable unfitness to parent—a presumption

2

established by the district court's April 2013 finding of F.T.'s unfitness. It heard evidence that, two months before trial, police had found F.T.'s girlfriend passed out in her apartment building hallway and F.T. passed out inside the apartment. It took the effort of paramedics to rouse F.T. from his heroin-induced stupor. (He muttered to the emergency responders that he was on heroin, but he denied it at trial, calling the episode merely a "medical situation."). The court also learned of F.T.'s history of domestic violence against A.T.'s mother and others. And it heard that, at the time of the trial, F.T. faced various criminal charges arising from incidents in April 2014 and May 2014. Witnesses explained that despite an extant domestic-violence no-contact order prohibiting F.T. from contact with A.T.'s mother, he was frequently seen with her, even in the days just before the trial.

The district court also received evidence that F.T. had still not completed a required psychosexual evaluation, that he had threatened to throw a brick through A.T.'s guardian ad litem's window, and that F.T. had initiated and participated in only four one-hour visits with A.T. in the previous nine months. A psychiatrist testified that F.T. has schizoaffective and anxiety disorders. The district court heard from another psychiatrist, a parent mentor who observed F.T., a psychologist who had evaluated F.T. for domestic-violence issues, and from F.T., among others. The district court found that F.T. was misleading or deliberately deceitful when he interacted with these professionals.

Finding that F.T. had made no showing to rebut the presumption of parental unfitness, the district court terminated F.T.'s parental rights to A.T. F.T. appeals.

3

# DECISION

We have no difficulty affirming the district court's decision to involuntarily terminate F.T.'s parental rights. We review the overall decision for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). But whether F.T. rebutted the presumption of palpable unfitness created by Minnesota Statutes section 260C.301, subdivision 1(b)(4) (2014), is a finding of fact that we review for clear error. *In re Welfare of the Child of D.L.D.*, 771 N.W.2d 538, 544 (Minn. App. 2009).

A district court needs no reason independent of the presumption to terminate parental rights because it is the parent's burden to produce "enough evidence to support a finding that the parent is suitable to be entrusted with the care of the children." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 137 (Minn. 2014) (quotation omitted). The district court's finding that F.T. did not rebut the presumption is not clearly erroneous because substantial evidence supports it. Not one of the testifying professionals opined that F.T. is ready to parent a child. F.T. is not employed, and his only resource for sustenance is government assistance. He also has not demonstrated any capacity to sustain stable housing for himself, let alone for himself and a child. He has refused to comply with the plan imposed in his previous termination, continuing to have unlawful contact with A.T.'s mother and with children, and he never completed the required psychosexual evaluation. He has continued to collect criminal convictions and new charges after the previous termination judgment. The record is devoid of any hint that F.T. is ready to parent now or in the foreseeable future.

We are not persuaded otherwise by F.T.'s argument that he rebutted the presumption with evidence that he pursued mental-health services. The argument is meritless for three reasons. First, a parent challenging the presumption of unfitness "must do more than engage in services," he must also "demonstrate that his . . . parenting abilities have improved." *D.L.D.*, 771 N.W.2d at 545. F.T. offers no evidence of improved parenting. Second, the record indicates that F.T. engaged in only minimal services. And third, the district court found that F.T. was being dishonest with his service providers. It observed that F.T. gave them only "limited information to place himself in a more favorable light" and that, as a consequence, he is not seriously addressing the deficiencies evident in his "mental health, emotional, chemical dependency, and child protection history." The district court thoroughly analyzed the trial testimony within the proper legal framework, and we see no clear error in its finding that F.T. failed to overcome the presumption.

F.T. also challenges the district court's conclusion that it was in A.T.'s best interest for the court to terminate F.T.'s parental rights. *See* Minn. Stat. 260C.301, subd. 7 (2014). He fails to explain how this is so. And on these facts, we need not elaborate on why we are satisfied that the district court's conclusion is unimpeachable.

**Affirmed.**