*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1906**

In the Matter of the Welfare of the
Children of:   A. N. L.-N. and A. L. P.,
Parents

**Filed May 9, 2016
Affirmed
Worke, Judge**

Wright County District Court
File No. 86-JV-15-3773

Jolanta M. Howard, Minneapolis, Minnesota (for appellant father)

Thomas N. Kelly, Wright County Attorney, Karen L. Wolff, Assistant County Attorney, Buffalo, Minnesota (for respondent county)

Kathleen Fischer, Monticello, Minnesota (guardian ad litem)

A.N.L.-N., Montrose, Minnesota (mother)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Smith, Tracy, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant challenges the termination of his parental rights, arguing that he rebutted the presumption that he is a palpably-unfit parent, and that the district court did not adequately address the best-interests factors.  We affirm.

## FACTS

In 2015, A.N.L.-N. gave birth to L.J.L.-P. Appellant A.L.P. is L.J.L.-P.'s biological father. On July 29, the county petitioned to terminate parental rights. A.N.L.-N. voluntarily terminated her parental rights.

At the termination hearing, the county introduced a certified copy of a previous order that involuntarily terminated A.L.P.'s parental rights to another child. A.L.P. testified that since the prior termination, he quit using alcohol and drugs. A.L.P. currently rents a bedroom in the basement of his friend M.W.'s home, but he testified that if L.J.L.-P. was returned to his care, he would eventually look for his own home. A.L.P. has a driver's license, an insured vehicle, and works part-time assisting autistic children. A.L.P. did not inform his employer that he has a maltreatment determination against him from Illinois for sexual abuse. A.L.P. testified that he is single, but admitted that he never explicitly ended his relationship with A.N.L.-N. A.L.P. also admitted to sharing his bedroom with A.N.L.-N.

L.J.L.-P. is now less than one year old. A.L.P. has never cared for an infant, but he started attending parenting classes after the county initiated the termination proceedings. A.L.P. completed 5 of the 12 classes, but has not learned about parenting infants. A.L.P. testified that he attends supervised visits with L.J.L.-P. and has never missed an appointment.

A.L.P. previously failed to complete court-ordered sex-offender treatment, but he currently attends therapy and has a support system that includes M.W., M.W.'s son, and

2

his cousin in Illinois. M.W. testified that she would assist A.L.P. in parenting L.J.L.-P. if necessary, but she would not babysit.

The guardian ad litem (GAL) expressed concern because A.L.P. failed to complete sex-offender treatment and did not resolve issues that were present during the prior termination proceedings. The GAL testified that A.L.P.'s bedroom was filled with boxes stacked high, clothes, and baby toys, and did not have enough room to fit a small crib. The bedroom was very damp, and the basement did not have egress windows. The GAL was concerned for the safety of the adults who lived there.

The GAL testified that A.L.P. is "short on patience," becomes hostile when challenged, and acts like he could disobey the county's instructions. The GAL was concerned about A.L.P.'s relationship with A.N.L.-N., stating that the couple lives together, A.L.P. is very controlling, and the relationship appears antagonistic. The GAL was also concerned that A.N.L.-N. offered to babysit L.J.L.-P. when necessary. The district court terminated A.L.P.'s parental rights. A.L.P. appeals.

**D E C I S I O N**

*Palpably unfit*

A.L.P. argues that the district court erred by concluding that he failed to rebut the presumption that he is palpably unfit to be a party to the parent-child relationship. A district court has discretion when determining whether to terminate parental rights. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136–37 (Minn. 2014). This court reviews de novo whether a parent's evidence is capable of justifying a finding in his or her favor.

*In re Welfare of Child of J.W.*, 807 N.W.2d 441, 446–47 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

A parent is presumed palpably unfit to be a party to the parent-child relationship "upon a showing that the parent's parental rights to one or more other children were involuntarily terminated." Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). To rebut the presumption, "a parent must introduce sufficient evidence that would allow a factfinder to find parental *fitness*." *In re Welfare of Child of J.L.L.*, 801 N.W.2d 405, 412 (Minn. App. 2011), *review denied* (Minn. July 28, 2011). The presumption is easily rebuttable. *R.D.L.*, 853 N.W.2d at 137. But "a parent must do more than engage in services; a parent must demonstrate that his or her parenting abilities have improved." *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009); *see R.D.L.*, 853 N.W.2d at 137 (stating that the parent must show that he "is suitable to be entrusted with the care of the child" (quotation omitted)).

Here, the record supports the district court's determination that the evidence is insufficient to conclude that A.L.P. rebutted the statutory presumption. A.L.P. has progressed by abstaining from alcohol and drugs, purchasing a car, working part-time, and renting a bedroom. But because mere sobriety and a degree of financial responsibility does not necessarily show that A.L.P. is a fit parent, this evidence does not automatically rebut the statutory presumption that A.L.P. is an unfit parent. Here, the GAL testified that A.L.P.'s bedroom did not have room for a small crib and was located in a damp basement that did not have egress windows. The GAL feared for the safety of the adults who lived there, and the district court found the GAL's testimony credible. We

4

defer to the district court's credibility determinations. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

A.L.P. also argues that he signed up for parenting classes and attended therapy. But A.L.P. did not sign up for parenting classes until after the county started termination proceedings. A.L.P. also admitted that he previously failed to complete court-ordered sex-offender treatment. *See D.L.D.*, 771 N.W.2d at 544 (stating that entering parenting classes after the county's involvement and failing to attend court-ordered counseling supported a finding that the parents' cooperation was superficial); *see also In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn. 1980) (stating that courts may consider the success of past treatment efforts).

Moreover, A.L.P. attempts to support his argument with future intentions. For example, A.L.P. intends to participate in infant-care classes, find an apartment that is better suited for L.J.L.-P., and distance himself from A.N.L.-N. But a district court is entitled to put limited weight on these arguments and find them less persuasive given their hypothetical nature. *See J.W.*, 807 N.W.2d at 446 (stating that "[the] evidence was appropriately focused on . . . skills and behavioral tendencies *at the time of the trial*" (emphasis added)).

A.L.P. also argues that *J.W.* supports reversal. In *J.W.*, the evidence and testimony of 14 witnesses established that the mother's parenting skills had progressed significantly through parenting classes and therapy. *Id.* The mother also established a stable environment; she lived with her husband who had a full-time job, the couple had two vehicles, and relatives testified that the mother could expect greater support. *Id.*

Here, minimal testimony displayed A.L.P.'s improved parenting abilities; M.W. testified that A.L.P. had supervised her five-year-old grandson, and she thought A.L.P. could be a good parent. A.L.P. also failed to establish that he "made significant progress" through parenting classes; A.L.P. started parenting classes after termination proceedings began, but he completed only 5 of 12 classes and had not participated in infant-care classes. A.L.P. also did not establish a "stable living environment" or a greater support system; A.L.P. lives with A.N.L.-N. in a damp basement bedroom that cannot fit a small crib and does not have egress windows. Moreover, M.W. testified that she would not babysit L.J.L.-P., and A.L.P.'s other means of support lives in Illinois. Therefore, *J.W.* is distinguishable, and the district court did not err by concluding that A.L.P. failed to rebut the statutory presumption.

***Best-interests findings***

A.L.P. argues that the district court's best-interests findings are insufficient. A district court's finding that termination is in a child's best interests is reviewed for an abuse of discretion. *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 95 (Minn. App. 2008). Before terminating parental rights, a district court must find that termination is in the best interests of the child and analyze: "(i) the child's interests in preserving the parent-child relationship; (ii) the parent's interests in preserving the parent-child relationship; and (iii) any competing interests of the child." Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3). A district court "must consider a child's best interests and explain its rationale in its findings and conclusions." *In re Termination of Parental Rights of Tanghe*, 672 N.W.2d 623, 626 (Minn. App. 2003). But the district court's findings need

not "go into great detail." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 711 (Minn. App. 2004).

Here, the district court concluded that terminating A.L.P.'s parental rights served L.J.L.-P.'s best interests. The district court also found: "[L.J.L.-P.]'s need for caregivers who can adequately provide a safe and stable environment and can meet the needs of the child's health and welfare significantly outweigh the interest of either the child or the parent in preserving the parent/child relationship." While the district court did not provide a lengthy explanation, it considered L.J.L.-P.'s interests, A.L.P.'s interests, and competing interests. *See In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992) (stating that competing interests "include such things as a stable environment [and] health considerations"). Therefore, the district court considered each factor and specifically found that termination was in L.J.L.-P.'s best interests. These findings are adequate to address L.J.L.P.'s best interests and, on this record, we conclude that these findings are adequately supported by the record.

**Affirmed.**