*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0655**

In the Matter of the Welfare of the Children of:  K. Y., Parent

**Filed November 14, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-JV-15-2104

Mary Moriarty, Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for appellant mother K.Y.)

Michael O. Freeman, Hennepin County Attorney, Kacy Wothe, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Mary Moriarty, Hennepin County Public Defender, Lee Kratch, Assistant Public Defender, Minneapolis, Minnesota (for respondent children G.C. and M.Y.)

Eric S. Rehm, Burnsville, Minnesota (for respondent guardian ad litem Patricia Timpane)

        Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and

Kirk, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant-mother K.Y. challenges the termination of her parental rights to three of her five children.[1] Mother argues that the district court (1) failed to base the termination decision on conditions existing at the time of the termination hearing, (2) erred in finding that respondent Hennepin County Human Services and Public Health Department (the department) made adequate efforts to reunify the family, and (3) erred in determining that termination is in the best interest of the children. We affirm.

## FACTS

Mother is the birth parent of five children, Child 1, born in 1998; Child 2, born in 2002; Child 3, born in 2009; Child 4, born in 2011; and Child 5, born in 2014.[2] In 2014, and, after mother allowed the presence of a registered predatory offender in her home, the department placed all of the children in foster care and petitioned the district court to adjudicate them in need of protection or services.

Mother admitted to the allegation that she had allowed a registered predatory offender to be in contact with her children. The district court adjudicated the children in need of protection or services, and case plans were created for mother and the children. Mother's case plan included having a mental health evaluation and following all

---

[1]Mother does not challenge the termination of her parental rights to her two oldest children.

[2]In the order terminating mother's parental rights, the district court designated the children as Child 1 to Child 5 based on chronological age, with Child 1 being the oldest, and so on. We use the same designations used by the district court.

recommendations, having a parenting assessment and following all recommendations, obtaining safe and stable housing, completing group therapy for parents of sexually abused children, participating in the children's therapy as required, and cooperating with the guardian ad litem. These services were designed and intended for mother to learn to keep her children safe and to "develop the insight to safely parent her children."

The department filed a petition to terminate mother's parental rights in April 2015. The petition alleged that mother's four eldest children "have been impacted mentally, physically and sexually due to a lack of supervision by [mother]," "have been exposed to sexual abuse while in [mother's] care," and that mother had knowingly allowed a predatory offender to live in her home and have contact with her children.

The case was tried over ten days. Evidence of mother's significant history with child protection services was admitted, including her own history in foster care and with sexual abuse.

The department offered and the district court admitted records of mother's case plans and her interactions with the department from 2000, 2002, 2003, and 2013. Records of services received by mother during the 2000 and 2002 cases included parenting assessments, psychological evaluations, parenting education classes, referral to a support group for sexual abuse victims, anger management classes, individual therapy, and classes about forming healthy friendships and relationships.

The guardian ad litem testified that mother had a pattern of finding support and services, but that when the support and services were no longer available, "things fell apart." She testified that, even with current support, conditions had not been corrected to

the point where mother could parent in the foreseeable future. She also testified that, in the months leading up to her testimony, she observed mother exhibit inappropriate and startling behavior. The guardian testified that she was recommending termination of parental rights to all of the children, including Child 5, who had been in foster care since birth, because of the pattern she had observed.

Several witnesses described a pattern that mother was a good parent to infant children, but as the child grows, mother passes the child off to the older children to manage. Witnesses described that mother would have Child 1 look after the other children and tend to their needs.

Three foster mothers testified about the behavioral and developmental issues of the children. The foster parent of Child 3 and Child 4 described Child 4's physical disabilities and behavioral issues and Child 3's behavioral issues. There was testimony from two foster mothers that mother seemed to downplay the seriousness of the children's sexual-abuse histories, including statements by mother that one of the children would not remember being a victim of sexual assault and that one child acted out sexually against children in a park because of "natural feelings." A family therapist for mother, Child 3, and Child 4 recommended that the children be removed from mother's care after concluding that extensive damage had been done to the children through abuse and neglect, and that their best interests would be served by removal from mother's care.

Mother testified that she had a support network through church and was learning to cope with her traumatic past. She disagreed with opinions that Child 4 had special needs and that another child had acted out sexually in a manner harmful to other children.

Mother testified about the criminal histories of her children's fathers. She admitted that she knew before she conceived Child 5 that Child 5's father had been convicted of the sexual assault of his juvenile family members.

Several of mother's service providers testified or provided letters supporting reunification with Child 5 and, with additional trial home visits, reunification with Child 3 and Child 4. Several parenting educators testified that mother had learned to recognize and distance herself from harmful individuals. Mother's therapists and a family therapist testified that mother was capable of keeping Child 5 safe, and could possibly keep safe Child 3 and Child 4 with additional trauma-informed therapy.

The district court terminated mother's parental rights to her children on five statutory grounds: (1) failure to meet parental duties, (2) palpable unfitness, (3) failure to correct conditions that led to the out-of-home placement, (4) egregious harm, and (5) children remaining neglected and in foster care. Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (6), (8) (2014). The district court did not find credible mother's testimony that she had changed.

The district court determined that "the compelling interests of all the children, where they achieve stability, a stable home environment and which meets their special needs favors termination of parental rights" and is in the children's best interests. The district court also determined that the department had provided an appropriate case plan designed to address the reasons for the children's out-of-home placement. The district court found, "that despite the provision of these efforts, [mother] has not corrected the

5

conditions that resulted in the out of home placement, and that she cannot adequately parent the children now or in the reasonably foreseeable future."

This appeal followed.

## DECISION

Courts presume that parents are fit to care for their children, and "[p]arental rights may be terminated only for grave and weighty reasons." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (quotation omitted). Termination requires clear and convincing evidence that (1) the department has made reasonable efforts to rehabilitate the parent and reunite the family, (2) there is at least one statutory ground for termination, and (3) termination is in the child's best interests. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). Whether to terminate a parent's parental rights is discretionary with the district court. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014).

We review a district court's decision to terminate parental rights to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by clear and convincing evidence. *In re Welfare of Child of T.P.*, 747 N.W.2d 356, 362 (Minn. 2008). While we conduct a close inquiry into the evidence, we also give "considerable deference" to the district court's termination decision. *S.E.P.*, 744 N.W.2d at 385. Because the district court is in a better position to weigh the evidence and determine the credibility of witnesses, we will not reweigh the evidence or disturb the district court's credibility determinations. *In re Welfare of R.T.B.,* 492 N.W.2d 1, 4 (Minn. App. 1992).

6

We review the district court's factual findings for clear error and review the ultimate determination that those findings fit the statutory criteria for abuse of discretion. *In re Welfare of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). "An abuse of discretion occurs if the district court improperly applied the law." *J.K.T.*, 814 N.W.2d at 87. We will affirm the district court's decision to terminate parental rights if at least one statutory ground for termination is supported by clear-and-convincing evidence, termination is in the best interests of the child, and the department has made reasonable efforts to reunite the family. *S.E.P.*, 744 N.W.2d at 385.

### Termination based on conditions that existed at the time of the hearing

Mother first challenges the district court's termination decision, asserting that the district court's findings are based on evidence of mother's past history and do not address "conditions that existed at the time of termination."

To support an order terminating parental rights, the district court must "make clear and specific findings which conform to the statutory requirements for termination" and those findings must "address conditions that exist at the time of the [termination] hearing." *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn. 1980). It must appear that the conditions giving rise to the termination will continue for a "prolonged, indeterminate period." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn. 2001); *In re Welfare of T.D.*, 731 N.W.2d 548, 554 (Minn. App. 2007). "When considering

7

termination of parental rights, the court relies not primarily on past history, but to a great extent upon the projected permanency of the parent's inability to care for his or her child." *In re Welfare of S.Z.*, 547 N.W.2d 886, 893 (Minn. 1996) (quotations omitted).

Several of the statutory grounds for termination included in the petition to terminate mother's parental rights required the district court to examine past conduct. *See* Minn. Stat. § 260C.301, subd. 1(b)(2) (directing court to consider whether the parent has "substantially, continuously, or repeatedly" failed to comply with parental duties); *Id.*, subd. 1(b)(4) (directing court to consider whether the parent is unfit based on "a consistent pattern of specific conduct" that the court determines to be of a "duration or nature" that renders the parent unable to care for the child); *Id.*, subd. 1(b)(6) (directing the court to examine whether the child has experienced egregious harm of a "nature, duration, or chronicity that indicates a lack of regard for the child's well-being"). Examining mother's history as part of the statutory-grounds analysis was a necessary part of the district court's considerations in light of the allegations that mother allowed predatory offenders near her children, chose sexual predators as her romantic partners, and did not protect her children from acting out sexually against each other.

Mother argues that the district court relied too heavily on her history and that its findings fail to demonstrate that it weighed and considered evidence she produced supporting her current ability to care for her children.

A district court should rely primarily on the projected permanency of a parent's inability to care for her children. But, in order for a district court to make a permanency prediction, it must consider the current conditions in the context of the history and

8

patterns of conduct. *See S.Z.*, 547 N.W.2d at 894 (holding that a long history of actions stemming from mental illness may be an indication that a person lacks the present and future ability to care for a child).

Here, the district court looked to mother's significant history with the department and her patterns of conduct, considered the current conditions within that context, and determined that mother's claims that the current case plan would lead to successful parenting and eventual reunification were not credible. It relied on mother's history with services and on trial testimony regarding mother's behavior during the pendency of the CHIPs case. The district court concluded that mother had a history of complying with case plans and using services, but that "her children continue to suffer while in her care and custody." The district court found that mother's testimony demonstrated a "lack of insight, lack of understanding, and lack of accountability."

Mother's challenge to the district court's termination order on the basis that it insufficiently considered the testimony put forth by mother's service providers is a credibility challenge. The order's silence regarding witness testimony demonstrates the district court's implicit decision not to credit some testimony over other evidence. *See In re Welfare of the Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009) (stating that this court defers to a district court's implicit finding that certain testimony was not credible). We will not reweigh the evidence, and we will not disturb district court credibility determinations; and this is so even in a case such as this, where a different conclusion might have resulted had the district court credited other evidence in the record. *See R.T.B.*, 492 N.W.2d at 4.

9

We next consider whether statutory grounds supporting termination found by the district court are supported by clear and convincing evidence.

*Failure to correct conditions*

After listing mother's history of services with the department since she was a child, the district court found that reasonable efforts had been made to correct the conditions leading to the placement of the children outside of the family home and that mother failed to correct those conditions. The district court concluded that mother "cannot adequately parent the children now or in the reasonably foreseeable future."

A district court may terminate parental rights to a child if, "following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement." Minn. Stat. § 260C.301, subd. 1(b)(5). Reasonable efforts are presumed to have failed upon a showing of a number of conditions listed in the statute. *See id.*

Here, the district court found that mother had received family therapy, group therapy for parents of sexually abused children, and parenting and mental health assessments. Mother also attended individual therapy and classes with parenting educators. Testimony indicates that mother's parenting educators believed that mother had met parenting goals of learning to keep her children safe and to not expose the children to harmful individuals. However, the record supports the district court's determination that mother failed to correct the conditions leading to the children's placement out of the home. The department sought services and information on whether mother would be able to develop the skills necessary to keep her children safe. There

was testimony that mother remained unable to effectively calm one of her children who experienced an episode of dysregulation during a therapy session, that mother cursed about the children in front of them, that mother disregarded orders pertaining to communication between a victimized child and the child who had sexually acted out against that child, that mother struggled with honesty, and that mother either did not understand or take seriously the severity of her children's future needs based on their history of sexual abuse and their individual disabilities.

This is a case in which mother complied to some extent with the terms of her case plan. The district court may nevertheless find a statutory basis to terminate parental rights where the record contains clear and convincing evidence supporting termination. *J.K.T.*, 814 N.W.2d at 89. "The critical issue is not whether the parent formally complied with the case plan, but rather whether the parent is presently able to assume the responsibilities of caring for the child." *Id.* The district court did not find credible mother's evidence supporting her present ability to care for her children and to keep them safe. The district court's findings are supported by clear and convincing evidence and are not clearly erroneous.

### *Palpable unfitness*

The district court also found that mother was palpably unfit to raise her children because of a pattern of losing interest and essentially abandoning her children once they are no longer infants. The district court found the testimony of witnesses to this pattern credible and found that, if Child 5 were returned to mother, the same pattern would occur.

11

A district court may terminate parental rights to a child if the court finds that the parent

> is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing, physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4).

The district court's palpable-fitness determination is supported by the testimony of three witnesses who observed mother's parenting techniques outside of mother's involvement with department services. They all testified to the pattern of mother's removal from the parenting role after an infant child becomes less dependent on mother. Mother's history of allowing her children to be watched by inappropriate adults has led to the sexual molestation of two of her children by an adult with whom mother chose to associate. Mother's history of not observing her children's interactions with one another has led to sexual acting out by older children against their younger siblings. The district court credited the concern of multiple witnesses that, if Child 5 was placed in the care of mother, Child 5 would be placed in danger because of mother's inability to properly care for children beyond infancy. Moreover, a parent's demonstrated failure to protect children from abuse by others, combined with conditions that put the children at risk for future abuse, can justify a determination that the parent is palpably unfit to be a party to the parent-child relationship. *See In re Children of T.A.A.*, 702 N.W.2d 703, 708-09

(Minn. 2005) (affirming palpable unfitness determination where parent failed to protect her children from abuse by others in the past and refused to recognize her responsibility to protect her children from abuse).

The district court's finding of palpable unfitness is supported by clear and convincing evidence. Despite evidence presented by mother's parenting educators to the contrary, testimony was presented that mother did not demonstrate the insight or accountability to correct her conduct in the future. The district court made credibility determinations and acted within its discretion in finding that this statutory basis to terminate mother's parental rights was proven.

Because these two grounds for termination relied on by the district court are supported by the record, we need not consider whether the evidence also is sufficient to support the district court's findings on the other three identified statutory grounds.

*Reasonable Efforts*

Mother argues that the district court erred in finding that the department engaged in reasonable efforts to reunify her with her children because the department (1) did not provide trauma-informed family therapy, (2) did not coordinate and communicate with service providers, and (3) rejected additional visits with the three youngest children. We disagree.

The termination statute requires the district court to make specific findings "that reasonable efforts to finalize the permanency plan to reunify the child and the parent were made." Minn. Stat. § 260C.301, subd. 8(1) (2014). The district court must make

13

"individualized and explicit findings regarding the nature and extent of efforts made by the social services agency to rehabilitate the parent and reunite the family." *Id.*

"When determining whether reasonable efforts have been made," the district court must consider "whether services to the child and family were: (1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances." Minn. Stat. § 260.012(h) (2014). "Reasonable efforts at rehabilitation are services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Children of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotations omitted), *review denied* (Minn. Mar. 28, 2007). "The [department's] efforts must be aimed at alleviating the conditions that gave rise to out-of-home placement, and they must conform to the problems presented." *J.K.T.*, 814 N.W.2d at 88. Determining whether the department provided reasonable efforts requires consideration of the length of the department's involvement, the nature of the problems presented, and the quality of the effort given. *Id.*

The district court found that the department made reasonable efforts to reunify the children with mother. The district court listed the services provided by the department as: individual therapy, group therapy for parents of sexually abused children, family therapy, a parenting assessment, and a mental health assessment. The district court also examined and made findings on the extensive history of the department's involvement with mother and her children. The district court made extensive findings on the services provided to mother in previous cases and used those findings to support the conclusion

14

that the current case plan, which required similar assessments and therapy, was both reasonable and intended to address mother's barriers to effective parenting. The district court found that the department offered services that were "timely, available, relevant, and culturally appropriate for the children and family, to remedy the circumstances requiring the foster care placement and permit reunification." The district court found that, despite the provision of these services, mother remained unable to effectively parent the children.

The testimony and evidence presented at trial support the district court's findings. Mother was provided with parenting classes to help her learn to keep her children safe and to learn to detect and avoid harmful relationships. Although some of the service providers would have liked to have had more communication with the department, there were meetings to coordinate the numerous services for mother and children. Mother was permitted unsupervised visits with Child 5 and weekly supervised visits with Child 3 and Child 4. Some service providers testified that mother would be able to effectively parent the children, while another service provider to the family stated that mother had been provided many services and failed to follow through with them. There was testimony that mother was invited to a school meeting with Child 1's service providers, but that she did not attend. There was testimony that mother would disregard rules put in place for the children's safety, such as allowing phone communications between children who were not permitted contact with one another because of a history of abuse. There was evidence that, during therapy, mother was unable to effectively calm dysregulation of one of her children. Though the record contained conflicting information on whether the case

plan had been effective to correct the conditions that led to the out-of-home placement, the district court chose to credit some evidence over other evidence. This is properly the role of the district court. *J.K.T.*, 814 N.W.2d at 90.

Based on a careful review of the record, we conclude that the record supports the district court's finding that the department's efforts were meaningful, reasonable, and intended to address the issues.

### Best Interests

Mother challenges the district court's determination that termination of her parental rights is in her children's best interests.

A child's best interests may preclude termination of a parent's parental rights, even if the district court rules that one or more of the statutory bases for terminating that parent's parental rights is present. *D.L.D.*, 771 N.W.2d at 545. "[T]he court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 711 (Minn. App. 2004) (citation omitted). Competing interests of the child "include a stable environment, health considerations, and the child's preferences." *In re Welfare of M.A.H.*, 839 N.W.2d 730, 744 (Minn. App. 2013). "Where the interests of parent and child conflict, the interests of the child are paramount." Minn. Stat. § 260C.301, subd. 7 (2014). In its termination order, a district court must explain its rationale for concluding why termination is in the child's best interests. *In re Tanghe*, 672 N.W.2d 623, 625

(Minn. App. 2003). We review a district court's determination that termination is in a child's best interest for an abuse of discretion. *J.R.B.*, 805 N.W.2d at 905.

The district court considered mother's wishes for reunification with Child 3, Child 4, and Child 5. The district court noted that all of the children had been out of the home for over 500 days. The district court determined that "the compelling interests of all the children, where they achieve stability, a stable home environment and which meets their special needs favors termination of parental rights." Mother argues that the district court's analysis disregarded substantial evidence about mother's present ability to safely parent the children and that its findings were therefore unfounded. However, there was evidence from foster parents and therapists that the children need support and stability, and evidence that mother did not appreciate or did not understand the children's special needs. The district court credited this evidence. To the extent that mother argues that a deferral of the permanency decision would have been in the best interest of Child 5, this argument is contrary to the district court's finding that all of the children "deserve to be adopted and learn healthy and stable living."

On careful review of the record, we conclude that the district court's best-interests findings are supported by substantial evidence and are not clearly erroneous. Although the evidence presented at trial might have led another district court to make different findings, had it credited other evidence, this does not show that the district court's findings are defective; we give considerable deference to the district court's decision. *S.E.P.*, 744 N.W.2d at 385.

**Affirmed.**